H. L. LUTTERLOH et al. v. CITY OF FAYETTEVILLE.

(Filed 5 November, 1908).

1. **Municipal Corporation—New Territory—Exercise of Jurisdiction Remedy by Injunction.**

   When the relief sought is to restrain a town from exercising jurisdiction within a territory recently included within the municipality, the proper remedy is an action for perpetual injunction, and when there are no issues of fact raised, and the injunction is refused, the Judge must necessarily determine the case upon its merits.

2. **Municipal Corporation—Boundaries—Description, Sufficiency of —Evidence.**

   When it is found as a fact by the trial Judge, that the increased boundaries of a town, as fixed by a legislative act, include the *locus in quo*, and the section of the act setting out the boundaries is not void for uncertainty, the question as to whether the plaintiff's property was included in the boundaries prescribed does not arise on appeal in an action including such inquiry.

3. **Municipal Corporations—Territory Annexed—Aye and No Vote— Constitutional Law.**

   When a municipal charter has been passed in accordance with Art. II, sec. 14, of the Constitution, requiring the aye and no vote to be taken on the several days, it is not necessary for an act annexing territory thereto to be passed in like manner to confer authority for the levying of taxes within the territory annexed.

4. **Municipal Corporations—Constitutional Law—Taxation—Representation.**

   An objection to the validity of an act adding territory to that of a town, for that it restricted the right to vote on the subject of municipal taxation to the voters within the annexed territory, is without merit, when it appears from a construction of the act as a whole that a contrary intention is declared.

5. **Municipal Corporations—Territory Annexed—Consent of Voters —Legislative Powers—Constitutional Law.**

   As there is no constitutional restriction here, our Legislature may annex contiguous or adjoining territory to that of a municipality, without the consent of the voters thereof, or of the old territory, and such action is not subject to review by the Courts.

6. Municipal Corporations—Charters—Contractual Rights — Vested
   Rights—Legislative Powers—Constitutional Law.
   No vested rights can accrue under a municipal charter as it is
   not a contract between the citizens of the municipality and the
   State; nor can valid objection be made to the Legislature annex-
   ing territory thereto on the ground that the old territory owed
   debts, for the presumption is that value was received which inures
   to the benefit of those residing within the territory annexed.

ACTION, from CUMBERLAND, heard by *Long, J.,* brought
to obtain a perpetual injunction to restrain defendant from
collecting taxes out of the residents in the territory in the
extension of city limits, or from exercising any jurisdiction
over persons or property resident in the extension, under chap.
489, Private Acts of 1907, entitled "An act to enlarge cor-
porate limits of the city of Fayetteville," ratified 11 March,
1907.

A temporary restraining order was issued, and being heard
upon the pleadings, affidavits and exhibits, the Court found
the material facts, dissolved the injunction, and plaintiff
appealed, and filed exceptions to said findings and judgment.

*C. W. Broadfoot, George M. Rose* and *John W. Hinsdale*
for plaintiff.

*J. Sprunt Newton, Sinclair & Dye* for defendant.

BROWN, J. 1. The plaintiffs contend that the Judge should
have passed solely upon the necessity for continuing the
injunction to the hearing, instead of going fully into the case
and deciding the entire controversy.

As the only relief asked for in the complaint is a perpetual
injunction restraining the defendant's authorities from exer-
cising any jurisdiction within the territory recently included
within the municipality, it would have been impossible intel-
ligently to determine whether to continue the restraining
order without considering and determining the legal issues
presented in the pleadings. There seems to be no controverted
issue of fact raised therein necessary to be submitted to a jury.

An action for a perpetual injunction is the proper remedy in controversies of this character (28 Cyc., 212), and where the Judge refuses to enjoin the exercise of jurisdiction over the annexed territory, he must necessarily determine the case on its merits.

2. It is contended that the boundaries given in the act of 1907 cannot be located, and that they are indefinite, uncertain and void.

There appears to have been an omission of certain words in enrolling the act of 1907, which error has been cured by the act of the special session of 1908, Private Laws, chap. 22, but independent of the effect of this latter act, the Judge below finds upon the testimony of the surveyor that the boundaries of the city, including the extension under the act of 1907, have been located, and that they embrace plaintiff's property.

The surveyor testifies, that locating the boundaries under the act of 1907 covers the same territory as those included in the amendatory act of 1908, except a small vacant and unimproved space, containing one and nine-tenths acres of land.

This testimony of the surveyor is adopted by the Judge as a fact and made a part of his findings. We think that settles the question so far as this Court is concerned, as the first section of the act setting out the boundaries is certainly not void on its face.

3. It is contended that the act of 1907 was not read on three several days and an aye and nay vote taken and recorded, as required by the Constitution, art. 2, sec. 14, and that, therefore, the act is void and can confer no power to levy a tax within the annexed territory. For this position plaintiffs rely on the case of *Cotton Mills v. Waxhaw,* 130 N. C., 293.

The charter of the city of Fayetteville, as at present organized, was enacted in 1893, and contains full authority for

the levying of taxes within the municipal boundaries, however those boundaries may be extended by subsequent legislation.

The *Waxhaw Case* is authority for the position, that a municipal charter conferring power to levy a tax must be enacted in accordance with that section of the Constitution. It is not contended that the charter of Fayetteville, enacted in 1893, is void for such reason.

The act of 1907 does not purport to authorize the levying of any tax or the contracting of any debt, and there is nothing on its face which could indicate to the General Assembly that it is one of those bills coming within the purview of section 14, article 2 of the organic law. It is not a city charter, but only an act annexing territory to a chartered municipality already in existence.

4. The plaintiffs except to the following rulings of the Court: "That, although the terms of the act of 11 March, 1907, do not prescribe with such definite clearness as they might have done who were qualified voters under the act; nevertheless, construing all of the parts thereof, it would seem that the Legislature intended to provide that the voters of the old town and the annexed district were all entitled to vote in said election. But the act itself is made a part of this finding."

The plaintiffs contend that the intention of the Legislature was to confine the election to the voters of the annexed district.

The language of the act would seem to give color to such contention, but taking the entire act as a whole, a careful reading of it, we think, justifies his Honor's interpretation.

Section 1, of the act describes particularly the territory to be annexed, then adds: "Provided, that no part of the city limits as now existing shall be eliminated from said city when so extended."

Section 3, provides for an election of "all persons embraced in the above-described boundaries," in which must necessarily

be included all parts of the city as then existing; and it also provided "for a registrar of voters living in the city of Fayetteville, including said above-described territory." The same section requires the registrar to register "such persons in said city, and in said above-described new territory as may present themselves for registration and are qualified to vote in city elections and not *at present registered.*"

These last words indicate clearly that the legislative intent was that all qualified voters in the old and new territory should be allowed to register and participate in the election.

5. Another and final objection made to the act of annexation is, that the object sought to be accomplished by it, in the mode provided, is beyond the power of the General Assembly, because it authorizes annexation, and consequently, taxation, without the consent of those who are affected by it.

· We have held in common with all the Courts of this country, that municipal corporations, in the absence of constitutional restrictions, are the creatures of the legislative will, and are subject to its control; the sole object being the common good, and that rests in legislative discretion. *Dorsey v. Henderson* and *Perry v. Commissioners,* at this term; *Manly v. Raleigh,* 57 N. C., 372.

Consequently, it follows that the enlargement of the municipal boundaries by the annexation of new territory, and the consequent extension of their corporate jurisdiction, including that of levying taxes, are legitimate subjects of legislation. In the absence of constitutional restriction, the extent to which such legislation shall be enacted, both with respect to the terms and circumstances under which the annexation may be had, and the manner in which it may be made, rests entirely in the discretion of the Legislature. With its wisdom, propriety or justice we have naught to do.

It has, therefore, been held that an act of annexation is valid which authorized the annexation of territory, without the consent of its inhabitants, to a municipal corporation,

having a large unprovided for indebtedness, for the payment of which the property included within the territory annexed became subject to taxation. *Powers v. Wood Co.,* 8 Ohio St., 285; *Blanchard v. Bissell,* 11 Ohio St., 96; *Richards v. Cincinnati,* 27 L. R. A., 746, and cases cited in note.

In the first cited case, the Supreme Court of Ohio says that there is no constitutional provision on the subject, and that "it would require a very artificial and unsound mode of reasoning to hold that territory could not be annexed to a town which owed debts, until the owners of such territory were paid a compensation in money for a proportional part of such debt"; and, further, "that it is not to be presumed that a municipal corporation has contracted a debt without being correspondingly benefited."

In the *Richards' Case, supra,* it is said, "it is not perceived how the amount or nature of the municipal indebtedness can affect the right of annexation if it be otherwise legal; for the power to bring into a municipal corporation by annexation, property not theretofore subject to taxation for municipal purposes, and lay taxes upon it to raise funds for the payment of any previously existing municipal debt, necessarily includes the power to do so for the payment of every such debt lawfully incurred. Persons thus brought into the annexing corporation and their property, like all of its other inhabitants and their property, receive and enjoy the benefits of all local improvements and should share the burdens existing when the enjoyment commences." See also *St. Louis v. Russell,* 9 Mo., 507; *Smith v. McCarthy,* 56 Pa., 359; *McCallie v. Chattanooga,* 3 Head., 317; *New Orleans v. Cazela,* 27 La., Ann., 156; *Montpelier v. East Montpelier,* 29 Vt., 12.

Judge Dillon, in his work on Municipal Corporations (4 Ed.), sec. 185, cites an array of authority in support of his text: "Not only may the Legislature originally fix the limits of the corporation, but it may, unless specially restrained in the Constitution, annex, or authorize the annexation of, con-

tiguous or other territory, and this without the consent, and even against the remonstrance, of the majority of the persons residing in the corporation or in the annexed territory. And it is no constitutional objection to the exercise of this power of compulsory annexation that the property thus brought within the corporate limits will be subjected to taxation to discharge a pre-existing municipal indebtedness, since this is a matter which, in the absence of special constitutional restriction, belongs wholly to the Legislature to determine." Such legislative enactments involve no sort of a contract between the General Assembly, on the one part, and the citizens of the locality to be annexed, on the other part.

This was settled in this State as long ago as 1850 in *Mills v. Williams,* 33 N. C., 558, and reiterated in *Manly v. Raleigh, supra,* and subsequent cases.

The doctrine of those cases was acted upon by the Supreme Court of the U. S. in the *Memphis Case,* 97 U. S., 284, when it held that: "The charters and constituent acts of public and municipal corporations are not, as we have seen before, contracts, and they may be changed at the pleasure of the Legislature, subject only to the restraints of special constitutional provisions, if any there be."

And the same position is affirmed in the recent case of *Hunter v. City of Pittsburgh,* 207 U. S., 161, wherein it is said: "There is no contract between the citizens and the taxpayers of a municipal corporation and the corporation itself, that the former shall be taxed only for the uses of the enlarged municipality formed by annexation under the authority of Pa. act of 7 February, 1906, to an adjoining and larger municipality.

"Citizens and taxpayers of a lesser municipality annexed under authority of this act, to an adjoining and larger municipality, are not deprived of their property without due process of law by reason of the burden of additional taxation resulting from consolidation, although the method of voting pre-

scribed by the statute has permitted the voters of the larger city to overpower the voters of the smaller one, and compel the union without their consent and against their protest."

Upon a review of the entire record the judgment of the Judge below is

Affirmed.