**CRUMP v. SNEAD**

[134 N.C. App. 353 (1999)]

MONTY RUSSELL CRUMP, AND GWYN LEACH SOWDERS, PETITIONERS V.
JUNE L. SNEAD, RESPONDENT

No. COA98-1424

(Filed 20 July 1999)

## 1. Constitutional Law— State—change of city council term— office not mandated by constitution—not unconstitutional

The trial court did not err by dismissing a claim that the General Assembly acted unconstitutionally in extending a city council term from two years to four years. The office is not mandated by the North Carolina Constitution and the General Assembly was within its authority in extending the term.

## 2. Constitutional Law— State—exclusive emolument—extension of city council term

Respondent did not receive an exclusive emolument under Article I, section 32 of the North Carolina Constitution where the General Assembly extended the term of his seat on the Rockingham City Council from two to four years. There was a reasonable basis for the legislature to conclude that the bill served the public interest and did not solely benefit respondent.

## 3. Constitutional Law— State—extension of city council term—participation in political process

The trial court did not err by concluding that a General Assembly bill extending a city council term from two to four years did not infringe upon petitioners' right to participate in the political process. Petitioners had the privilege of running for office, not the right, and neither petitioners' nor the public's rights were infringed.

Appeal by petitioners from judgment entered 16 October 1998 by Judge Sanford L. Steelman, Jr., in Richmond County Superior Court. Heard in the Court of Appeals 9 June 1999.

*Bruce T. Cunningham, Jr. for petitioner-appellants.*

*Womble Carlyle Sandridge & Rice, P.L.L.C.; by James R. Morgan, Jr., for respondent-appellee.*

HUNTER, Judge.

The facts as stipulated by the parties show that prior to 26 June 1996, the charter of the City of Rockingham ("Rockingham") specifically provided for staggered terms in its city council elections, with two candidates being elected for four-year terms and one candidate being elected for a two-year term, every two years. On 14 March 1995, the Rockingham City Council ("city council") adopted a resolution requesting that the North Carolina General Assembly provide that the one two-year term be changed to a four-year term. The fact that the city council adopted this resolution was published on the front page of the *Richmond County Daily Journal* on 15 March 1995.

At the 7 November 1995 general election, respondent June L. Snead defeated petitioner Gwyn Leach Sowders for the two-year term on the city council. On 21 June 1996, the General Assembly enacted Senate Bill 540 ("SB 540"), which deleted the provision in the Rockingham City Charter requiring one seat on the city council to be for a two-year term, essentially making all five seats on the city council four-year terms. The provision applied retroactively. The retroactive application of SB 540 had the effect of extending the term of Snead from two to four years. It was stipulated by the parties that Sowders expressed interest in filing for the former two-year seat in the November 1997 election.

On 9 December 1997, the city council went into closed session at the request of Snead to discuss the termination of petitioner Russell Crump. As a result of the meeting, Crump agreed to resign as city manager of Rockingham in exchange for a lump-sum severance payment.

On 23 December 1997, petitioners Crump and Sowders (hereinafter "petitioners") instituted this action by filing for a declaratory judgment against respondents Rockingham and Snead alleging that SB 540 was unconstitutional and thus respondent Snead was not a lawful member of the city council. On 30 January 1998, petitioners dismissed Rockingham as a respondent. Both parties agreed to the stipulated facts. On 23 September 1998, the matter came for hearing before Judge Sanford L. Steelman, Jr., in the Richmond County Superior Court. On 16 October 1998, Judge Steelman issued a judgment finding SB 540 constitutional and dismissing petitioners' action by concluding that SB 540 did not confer an exclusive emolument upon Snead (hereinafter "respondent") nor did it violate Article I,

§§ 9, 14, 35, or 36 of the North Carolina Constitution. Petitioners filed a notice of appeal on 27 October 1998.

[1] First, petitioners assert that the trial court erred in dismissing their action with prejudice by finding SB 540 constitutional. We disagree.

In reviewing legislation, the North Carolina Supreme Court "reviews acts of the state legislature with great deference; a statute cannot be declared unconstitutional under the State Constitution unless that Constitution clearly prohibits the statute." *Brannon v. N.C. State Board of Elections*, 331 N.C. 335, 339, 416 S.E.2d 390, 392 (1992). "[A] statute enacted by the General Assembly is presumed to be constitutional." *Wayne County Citizens Ass'n v. Wayne County Bd. of Com'rs.*, 328 N.C. 24, 29, 399 S.E.2d 311, 314-15 (1991). "A statute will not be declared unconstitutional unless this conclusion is so clear that no reasonable doubt can arise, or the statute cannot be upheld on any reasonable ground." *Id.* at 29, 399 S.E.2d at 315 (citation omitted); *see also Brannon*, 331 N.C. 335, 416 S.E.2d 390.

Petitioners further contend that the trial court's reliance on *Penny v. Board of Elections*, 217 N.C. 276, 7 S.E.2d 559 (1940), is misplaced, and that case should be limited to its specific facts. We disagree.

*Penny* presents an identical factual scenario to the case at bar. In *Penny*, the Harnett County Register of Deeds was elected to a two-year term in November of 1938, and took office in December of 1938. During the two-year term, the General Assembly enacted a statute that "extend[ed] the term of the incumbent of the office of register of deeds of Harnett County for a term which will not expire until the first Monday of December, 1942." *Id.* at 277, 7 S.E.2d at 560. The effect of this statute was to extend the term of the register of deeds from two-years to four-years. A would-be candidate for that office filed suit claiming that the extension of the term was unconstitutional. In *Penny*, our Supreme Court held that the statute that changed the length of term of the register of deeds was constitutional. Here, a city council term was extended from two to four years by the General Assembly just as the register of deeds' term was extended in *Penny*. *Penny* is directly on point.

More recently, in *State ex Rel. Martin v. Preston*, 325 N.C. 438, 385 S.E.2d 473 (1989), the Supreme Court approved an act of the General Assembly which had the effect of extending the terms of a

number of superior court judges, who were constitutionally elected officials. In that case, the Court cited with approval the language of *Penny. Id.* at 454-455, 385 S.E.2d at 482.

Furthermore, the North Carolina Constitution states:

> The General Assembly shall provide for the organization and government and the fixing of boundaries of counties, cities and towns, and other governmental subdivisions, and, except as otherwise prohibited by this Constitution, may give such powers and duties to counties, cities and towns, and other governmental subdivisions as it may deem advisable.

N.C. Const. art. VII, § 1. This section does not "forbid altering or amending charters of cities, towns and incorporated villages or conferring upon municipal corporations additional powers or restricting the powers theretofore vested in them." *Holton v. Mocksville,* 189 N.C. 144, 149, 126 S.E. 326, 328 (1925). "[W]hen . . . there is no constitutional limitation to the contrary, . . . 'the legislature has full power to amend the charter of a municipal corporation . . . at its pleasure . . . .' " *Bethania Town Lot Committee v. City of Winston-Salem,* 126 N.C. App. 783, 786, 486 S.E.2d 729, 732 (1997) (*citing* 56 Am. Jur. 2d *Municipal Corporations* § 51 (1971)), *aff'd,* 348 N.C. 664, 502 S.E.2d 360 (1998). Thus, in the case *sub judice,* the General Assembly was acting within its authority when it amended Rockingham's charter.

With regards to this city council seat, the office is not mandated by the North Carolina Constitution. "Where the office is purely statutory the Legislature may either shorten or lengthen the term and make the act apply to those in office at the time when the act becomes effective." *Penny,* 217 N.C. at 278, 7 S.E.2d at 561 (citation omitted). Therefore, the General Assembly was acting within its authority in extending the city council term of office. Petitioners' assignment of error is overruled.

[2] Next, petitioners contend that the trial court erred by finding as a fact and concluding as a matter of law that SB 540 did not confer an exclusive emolument on respondent. Again, we disagree.

An emolument is defined as "[t]he profit arising from office, employment, or labor; that which is received as a compensation for services, or which is annexed to the possession of office as salary, fees, and perquisites." Black's Law Dictionary 524 (6th ed. 1990). The

North Carolina Constitution states, "[n]o person or set of persons is entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services." N.C. Const. art. I, § 32. The constitutional limitation contained in § 32 has often been invoked by the Supreme Court to strike down legislation conferring special privileges not in consideration of public service. *Brumley v. Baxter*, 225 N.C. 691, 696, 36 S.E.2d 281, 285 (1945). However, when the legislation is for a public purpose and in the public interest, and does not confer exclusive privilege, it has been upheld. *Id.* Here, respondent received $3,000.00 in salary and $3,228.00 in benefits per year. Petitioners contend that the amount earned by respondent during the additional two years in office amounted to double compensation and thus, an exclusive emolument.

Our Supreme Court has held that an item will not be considered an exclusive emolument within the meaning of § 32 if the statute meets two requirements: "(1) the exemption [or benefit] is intended to promote the general welfare rather than the benefit of the individual, and (2) there is a reasonable basis for the legislature to conclude the granting of the exemption [or benefit] serves the public interest." *Town of Emerald Isle v. State*, 320 N.C. 640, 654, 360 S.E.2d 756, 764 (1987). Here, the stated purpose of SB 540 was "to provide for election of all the members of the Rockingham City Council for four-year terms." 1995 N.C. Sess. Laws ch. 698. Petitioners argue that there were alternative ways to achieve the same result as SB 540. Assuming, *arguendo*, that there may be other alternatives, petitioners present no precedent stating that the General Assembly cannot choose from several alternatives to accomplish its desired result. There was a reasonable basis for the legislature to conclude that SB 540 served the public interest and did not solely benefit respondent. Respondent received the $3,000.00 salary and $3,228.00 benefits as compensation in consideration for public service as an elected official of the city council. Therefore, we hold that respondent did not receive an exclusive emolument in violation of Article I, § 32 of the North Carolina Constitution. Petitioners' assignment of error is overruled.

[3] Finally, petitioners argue that the trial court erred in finding as a fact and concluding as a matter of law that SB 540 did not violate their rights under Article I, §§ 9, 14, 35, and 36 of the North Carolina Constitution. Petitioners contend that SB 540 infringed upon their right to participate in the political process while also infringing upon the rights of voters. We disagree.

In *Penny*, the Court held:

[T]he public has no vested right in the election of any officer except as that mode of selection may be guaranteed by the Constitution, under provisions which are unalterable by legislative action. The right of plaintiff to stand for election to an office is a political privilege and not inalienable, and certainly when a different method of selection has been provided, consistent with the Constitution, the fact that his aspiration has been thwarted by a nondiscriminatory change of the law gives him no cause of action.

*Penny*, 217 N.C. at 279, 7 S.E.2d at 561. Petitioners did not have a right, but did have a privilege to run for office. In fact, petitioners still had the opportunity to run for either of two four-year city council seats in the 1997 election and did not do so. As to voters' rights, "[t]he right to vote *per se* is not a fundamental right under our Constitution; instead, once the right to vote is conferred, the *equal* right to vote is a fundamental right." *Martin*, 325 N.C. at 454, 385 S.E.2d at 481 (citation omitted) (emphasis in original). As neither the petitioners' nor the public's rights were infringed, petitioners' assignment of error is overruled.

For the foregoing reasons, we hold that SB 540 as enacted by the General Assembly is constitutional and thus respondent is a lawful member of the Rockingham City Council.

Affirmed.

Judges JOHN and TIMMONS-GOODSON concur.